UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

ROSWELL CAPITAL PARTNERS, LLC, as Collateral : 
Agent; BRIDGEPOINTE MASTER FUND LTD.; :
CAMHZN MASTER LDC; and CAMOFI MASTER :          08 Civ. 10647 (DLC)
LDC, :
:
          Plaintiffs, :
:
          v. :
:
ALTERNATIVE CONSTRUCTION :
TECHNOLOGIES, INC. f/k/a  ALTERNATIVE :
CONSTRUCTION COMPANY, INC.; :
ALTERNATIVE CONSTRUCTION BY PROSTEEL :
BUILDERS, INC. f/k/a PROSTEEL BUILDERS, :
CORP.; ALTERNATIVE CONSTRUCTION :
TECHNOLOGIES CORPORATION; ALTERNATIVE :
CONSTRUCTION MANUFACTURING OF :
TENNESSEE, INC. f/k/a ALTERNATIVE :
CONSTRUCTION TECHNOLOGIES :
CORPORATION; ALTERNATIVE :
CONSTRUCTION SAFE ROOMS, INC. f/k/a :
UNIVERSAL SAFE STRUCTURES, INC.; FUTURE :
OF BUILDING INSTITUTE, INC.; ALTERNATIVE :
CONSTRUCTION MANUFACTURING OF :
FLORIDA, INC.; ALTERNATIVE CONSTRUCTION :
BY IONIAN, INC. f/k/a IONIAN CONSTRUCTION, :
INC.; ALTERNATIVE CONSTRUCTION BY :
REVELS, INC.; ALTERNATIVE CONSTRUCTION :
CONSULTING SERVICES, INC.; ALTERNATIVE :
CONSTRUCTION DESIGN INC.; SOLAR 18 :
ACTECH PANEL, INC.; MODULAR RENTAL & :
LEASING CORPORATION; JOHN DOES 1-10, :
:
          Defendants. :
------------------------------------------------------------------- X

**PLAINTIFFS' PRETRIAL MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

SUMMARY OF PLAINTIFFS' EVIDENCE .......................................................... 3

    A.    Plaintiffs' Proposed Findings Of Fact And Conclusions Of Law ........................ 4

    B.    Statement Of Admitted Facts ............................................................................. 4

    C.    Direct Testimony By Declaration Of Brad Hathorn ............................................. 5

    D.    Direct Testimony By Declaration Of Thomas Dawe ............................................ 5

    E.    Deposition Summaries And Designations ........................................................... 6

    F.    Plaintiffs' Trial Exhibits ................................................................................... 7

ARGUMENT ..................................................................................................... 7

I.    THE EVIDENCE AND ADMISSIONS DEMONSTRATE PLAINTIFFS'
ENTITLEMENT TO ENTRY OF JUDGMENT .............................................. 7

    A.    Plaintiffs Are Entitled To Entry Of Judgment Against Defendants In The
Amount Of The Default Payments Due Under Loan Agreements ....................... 7

    B.    Plaintiffs Are Entitled To A Permanent Injunction Directing Defendants
To Turn Over All Assets Constituting Collateral ................................................ 8

II.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ORDER
TO PREVENT DEFENDANTS FROM MISAPPROPRIATING,
TRANSFERRING OR DISSIPATING THE COLLATERAL ..................................... 10

    A.    Absent Injunctive Relief, Plaintiffs Will Suffer Irreparable Harm From
The Imminent Misappropriation And Dissipation Of The Collateral ................. 10

        1.    Plaintiffs Will Suffer Irreparable Harm If Not Allowed To Protect
The Collateral Pursuant To Their Rights In The Loan Agreements ........ 10

        2.    ACT's Contractual Admissions Of Irreparable Harm In The Event
Of Default Further Establish Plaintiffs' Right To Injunctive Relief ........ 11

    B.    Plaintiffs Will Succeed On The Merits Given Defendants' Admitted And
Undisputed Default Under The Loan Agreements ............................................. 12

    C.    The Balance Of Hardships Tips Decidedly In Plaintiffs' Favor .......................... 13

III.    DEFENDANTS' PUTATIVE DEFENSES AND COUNTERCLAIM ARE
LEGALLY AND FACTUALLY DEFECTIVE ................................................ 13

    A.    Defendants' Purported Defenses Are Legally Unsustainable ............................. 13

        1.    Defendants' "Unclean Hands" Defense Fails As A Matter Of Law ........ 14

        2.    Defendants' Breach Of Contract Defenses Fail As A Matter Of
Law ........................................................................................................ 17

**TABLE OF CONTENTS**
(continued)

Page

3. Defendants' Putative Usury Defense Is Unavailable As A Matter Of Law ................................................................................................. 18

B. Defendants' Purported Counterclaim Fails........................................................ 19

CONCLUSION................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

4 Hour Wireless v. Smith,
  2002 WL 31654963 (S.D.N.Y. Nov. 22, 2002)..............................................................14

Alpha Capital Aktiengesellschaft v. Advanced Viral Research,
  2003 WL 328302 (S.D.N.Y. Feb. 11, 2003)..................................................................12

Am. Sav. Bank, F.S.B., v. Cheshire Mgmt. Co.,
  693 F. Supp. 42 (S.D.N.Y. 1988) .................................................................................11

Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc.,
  192 A.D.2d 1066 (4th Dep't 1993)...............................................................................18

Compagnie Financiere de CIC et de l'Union Europeenne v. Merrill Lynch,
  Pierce, Fenner & Smith, Inc.,
  188 F.3d 31 (2d Cir. 1999)............................................................................................13

Computerland Corp. v. Batac, Inc.,
  1988 WL 140816 (S.D.N.Y. Dec. 16, 1988) ................................................................11

Connecticut Nat'l Bank v. Peach Lake Plaza,
  204 A.D.2d 909 (3d Dep't 1994)..................................................................................14

Estee Lauder Cos. v. Batra,
  430 F. Supp. 2d 158 (S.D.N.Y. 2006)...........................................................................12

FDIC v. Julius Richman, Inc.,
  666 F.2d 780 (2d Cir. 1981)..........................................................................................18

Fundex Capital Corp. v. Reichard,
  172 A.D.2d 420 (1st Dep't 1991) ...................................................................................8

Gelfand v. Stone,
  727 F. Supp. 98 (S.D.N.Y. 1989) .................................................................................10

George H. Nutman, Inc. v. Aetna Bus. Credit, Inc.,
  115 Misc. 2d 168 (N.Y. Sup. Queens Co. 1982) ...........................................................7

Hasbro, Inc. v. Lanard Toys, Ltd.,
  858 F.2d 70 (2d Cir. 1988)...........................................................................................10

In re Teletronics Servs., Inc.,
  29 B.R. 139 (Bankr. E.D.N.Y. 1983)............................................................................18

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.,
   83 F. Supp. 2d 384 (S.D.N.Y. 2000)...................................................15,17, 18

McNellis v. Merchs. Nat'l Bank & Trust Co. of Syracuse, N.Y.,
   390 F.2d 239 (2d Cir. 1968)........................................................................18

N. Atlantic Instruments, Inc. v. Haber,
   188 F.3d 38 (2d Cir. 1999).........................................................................12

Nat'l Distillers & Chem. Corp. v. Seyopp Corp.,
   17 N.Y.2d 12 (1966) ..................................................................................14

Nat'l Elevator Cab & Door Corp. v. H & B, Inc.,
   2008 WL 207843 (E.D.N.Y. Jan. 24, 2008) ..............................................12

Netherby Ltd. v. Jones Apparel Group, Inc.,
   2007 WL 1041648 (S.D.N.Y. Apr. 5, 2007)...............................................12

Prudential Sec. Credit Corp v. Tevee Toons, Inc.,
   5 A.D.3d 226 (1st Dep't 2004) ..................................................................14

Red Rock Commodities, Ltd. v. ABN-AMRO Bank, N.A.,
   1995 WL 714349 (S.D.N.Y. Dec. 5, 1995) ...............................................18

Red Tulip, LLC v. Neiva,
   44 A.D.3d 204 (1st Dep't 2007) ................................................................15

Republic of the Philippines v. Marcos,
   806 F.2d 344 (2d Cir. 1986)........................................................................10

Schecter v. Comptroller of the City of New York,
   79 F.3d 265 (2d Cir. 1996)....................................................................13, 18

Sec. Pac. Mortgage & Real Estate Serv., Inc. v. Canadian
   Land Co. of Am., N.V.,
   690 F. Supp. 1214 (S.D.N.Y. 1988)...........................................................14

SEC v. Princeton Econ. Int'l. Ltd.,
   73 F. Supp. 2d 420 (S.D.N.Y. 1999)..........................................................10

Ticor Title Ins. Co. v. Cohen,
   173 F.3d 63 (2d Cir. 1999).........................................................................11

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

SEC v. Princeton Econ. Int'l. Ltd.,
  73 F. Supp. 2d 420 (S.D.N.Y. 1999)..................................................................10

Ticor Title Ins. Co. v. Cohen,
  173 F.3d 63 (2d Cir. 1999)..............................................................................11

Ursa Minor Ltd. v. AON Financial Products, Inc.,
  2000 WL 1010278 (S.D.N.Y. July 21, 2000) .......................................................13

Woodward & Dickerson v. Kahn,
  767 F. Supp. 530 (S.D.N.Y. 1991) ....................................................................14


**STATUTES**

N.Y. GOL § 5-521(1) (McKinney's 2008) .............................................................18

N.Y. UCC § 9-601(a) (McKinney's 2008) ...............................................................8

N.Y. UCC § 9-601(c) (McKinney's 2008) ...............................................................8

N.Y. UCC § 9-609 (a)-(c) (McKinney's 2008) .........................................................9

Plaintiffs Roswell Capital Partners, LLC ("Roswell"), as Collateral Agent, BridgePointe Master Fund Ltd. ("BridgePointe"), CAMHZN Master LDC ("CAMHZN"), and CAMOFI Master LDC ("CAMOFI") (collectively, "Plaintiffs"), respectfully submit this Pretrial Memorandum of Law. A more detailed discussion of the relevant facts and legal authorities is provided in Plaintiffs' Proposed Findings of Fact and Conclusions of Law submitted simultaneously with this Memorandum of Law.

## PRELIMINARY STATEMENT

In this action, Plaintiffs, a group of secured lenders, seek to exercise their undisputed right to take possession and foreclose on their collateral following defendants' undisputed and numerous defaults on the parties' loan agreements.

Plaintiffs' case is simple. BridgePointe, CAMHZN and CAMOFI (together, the "Secured Lenders") are asset management funds. Defendant Accelerated Construction Technologies, Inc. ("ACT") is a construction company that primarily builds proprietary construction panels under three U.S. patents. The Secured Lenders loaned ACT in excess of $6 million in two rounds of financing. In the first round, the Secured Lenders loaned $4,000,000 in or around June 2007 (the "2007 Funding"). In the second round, the Secured Lenders loaned in excess of $2,000,000 in or around May 2008 (the "2008 Funding"). The remaining Plaintiff, Roswell, is the Collateral Agent of the Secured Lenders appointed under the loan transaction documents. The defendants other than ACT are each majority- or wholly-owned subsidiaries of ACT (the "Subsidiary Defendants"). Each Subsidiary Defendant unconditionally and irrevocably guaranteed ACT's obligations to the Secured Lenders (ACT and the Subsidiary Defendants, collectively, "Defendants").

In consideration for the two rounds of loans, among other things, ACT granted the Secured Lenders: (1) Senior Secured Debentures (the "Debentures") in consideration for the

2007 Funding; and (2) Senior Secured Grid Notes (the "Notes") in consideration for the 2008 Funding. ACT also granted the Secured Lenders a senior secured interest in all of its assets, including the stock of and/or equity interest in each of the Subsidiary Defendants, as collateral for the loans (the "Collateral").

On July 1, 2008, Defendants defaulted under the 2007 Funding by failing to make payments of principal and interest when due. This default under the 2007 Funding also constituted a default under the 2008 Funding pursuant to the cross-default provisions in the transaction documents. In July 2008, Defendants further defaulted under the 2008 Funding by failing to direct payments from certain designated customers to a "Lockbox Account" established for the benefit of two of the Secured Lenders. The 2008 Funding consists of a Line of Credit Agreement, under which ACT could draw up to 60% of the value of executory contracts with customers, prior to performance, provided that it directed all payments under the contracts into the Lockbox Account for the benefit of the Secured Creditors. Funds submitted to the Lockbox Account would be applied against the outstanding principal and interest due under the line of credit. By diverting designated payments from the Lockbox Account for its own use, ACT breached the most fundamental provisions of the 2008 Funding: repayment of principal and interest in accordance with its terms.

The Secured Lenders provided ACT with notice of these defaults, accelerated the Debentures and Notes, and demanded payment of the contractually agreed-upon default amounts in accordance with their terms. Defendants at no point have cured their defaults.

None of the foregoing facts are disputed. Defendants have admitted these facts in public filings with the Securities and Exchange Commission ("SEC"), in discovery, and in their

Answer. Indeed, the factual record is replete with additional defaults by Defendants, some of which occurred immediately following the closing of the 2007 Funding.

Defendants' only response to these numerous and sweeping admissions of default is that Plaintiffs somehow allegedly breached the Funding agreements first, or are equally at fault, thus excusing Defendants' admitted defaults. The evidence, however, exposes these defenses as baseless and contrived, reflecting only Defendants' desperate hope of avoiding judgment. As demonstrated below, Defendants' putative defenses and counterclaim are factually and legally unsustainable.

Accordingly, Plaintiffs are entitled to entry of judgment: (a) preliminarily and permanently enjoining Defendants from transferring, pledging, hypothecating, encumbering, licensing, selling or otherwise disposing of any "Collateral" as defined in the relevant transaction documents; (b) directing Defendants to assemble and make available to Plaintiffs all assets constituting Collateral for the purpose of possession and lawful disposition or sale; and (c) for an award of contract damages in the amounts due under the Debentures and Notes, together with interest and attorneys' fees, in accordance with the terms of the Funding documents.

## SUMMARY OF PLAINTIFFS' EVIDENCE

Together with this Memorandum of Law, Plaintiffs have submitted the following pretrial documents:

A.    Plaintiffs' Proposed Findings of Fact and Conclusions of Law;

B.    Statement of Admitted Facts;

C.    Direct testimony by Declaration of Brad Hathorn;

D.    Direct testimony by Declaration of Thomas Dawe;

E.    Summaries and designations of the deposition testimony of Michael Hawkins, Thomas Amon, Bruce Harmon, and Dennis Towell; and

F.    Two sets of Plaintiffs' trial exhibits.

As described briefly below, these submissions provide overwhelming evidence of Defendants' numerous defaults and Plaintiffs' entitlement to relief under the governing agreements.

**A.    Plaintiffs' Proposed Findings Of Fact And Conclusions Of Law**

Plaintiffs set forth a detailed recitation of the relevant agreements, facts and principles of law in Plaintiffs' Proposed Findings of Fact and Conclusions of Law, together with full citation to Defendants' admissions, record evidence, and case law.  For the convenience of the Court and in the interest of avoiding unnecessary repetition, the Court is respectfully referred to that submission for a complete synthesis of Plaintiffs' case in chief.  That document further addresses and summarizes the fatal factual and legal infirmities in Defendants' putative defenses and counterclaim.

**B.    Statement Of Admitted Facts**

Defendants' Answer filed in this case admits the majority of the allegations contained in Plaintiffs' Complaint.  For the convenience of the Court, and in lieu of stipulated facts, the Statement of Admitted Facts sets forth, verbatim, each of the factual allegations from the Complaint admitted to by Defendants, which cover 114 of the 166 numbered paragraphs of the Complaint.

By itself, the Statement of Admitted Facts establishes Defendants' liability. Defendants admit unequivocally, in more than 15 separate admitted paragraphs, that they are in default.  (A ¶¶ 7, 55, 60, 65-66, 68, 70-71, 81, 87, 90, 93-94, 101, 132-133, 161.)  Defendants also admit:  (1) that they failed to pay their obligations under the Debentures or Notes; (2) that they diverted funds from the Lockbox; (3) that they failed to cure their defaults; (4) that they owe accelerated interest and principal under the 2007 Funding and 2008 Funding; (5) that they

4

conceded their defaults in various SEC filings; (6) that the Subsidiary Defendants have guaranteed ACT's obligations under the 2007 Funding and 2008 Funding; and (7) that Plaintiffs' Collateral covers all the assets of the Defendants.  Even absent the other evidence described below, these admissions and others described in the Statement of Admitted Facts should dispose of this matter.

**C.**    **Direct Testimony By Declaration Of Brad Hathorn**

The testimony of Mr. Hathorn, In-House Counsel for Roswell, addresses the documents comprising the 2007 and 2008 Fundings, the mechanics of those transactions and the security provided in connection with those transactions.  Mr. Hathorn's testimony also covers the numerous instances of payment defaults and other defaults which have occurred under the 2007 and 2008 Fundings, and the monetary damages that Plaintiffs' have incurred as a result of those defaults.  Mr. Hathorn further confirms that Plaintiffs have abided by the terms of the relevant agreements and that the value of their Collateral dissipates every day that it remains in the hands of the Defendants.

**D.**    **Direct Testimony By Declaration Of Thomas Dawe**

Mr. Dawe is a former employee of Roswell and, between July and September 2008, was a member of ACT's board of directors.  Mr. Dawe's testimony discusses his role with respect to the 2007 and 2008 Fundings, and Defendants' repeated defaults.  This includes ACT's apparent default by virtue of paying $800,000 in designated working capital immediately after the closing of the 2007 Funding to Avante Holdings Group, a company owned and controlled by ACT's CEO, Michael Hawkins.  Mr. Dawe's testimony also states that Michael Hawkins dominated ACT's board of directors and describes Plaintiffs' agreement to provide the 2008 Funding.

E.    **Deposition Summaries And Designations**

Plaintiffs conducted depositions of four individuals: Michael Hawkins, a principal of Defendants; Thomas Amon, a Director, Secretary, and corporate counsel for Defendants; Bruce Harmon, the former Chief Financial Officer of ACT; and Dennis Towell, as a representative of Nelson LC ("Nelson"), a significant customer of ACT.

Mr. Hawkins' deposition designations confirm that, at all relevant times, he was the principal, if not sole, decision-maker for Defendants. Mr. Hawkins further admitted to various defaults of the Funding agreements and that various of the affirmative defenses asserted by Defendants have no evidentiary support. Mr. Hawkins also testified to a history of conflicted, related-party transactions. Mr. Hawkins also admitted that he pled guilty in a 1997 court martial proceeding in the US Air Force and was sentenced to 10 months in military prison for engaging in an unlawful, related-party transaction.

Mr. Amon's deposition designations contain numerous, frank admissions of default by Defendants, as well as admissions of other violations of the terms of the Funding agreements. In his testimony, Mr. Amon admitted that ACT did not honor a number of the terms of the Funding agreements. He also testified that he serves as counsel for a number of companies owned and/or operated by Michael Hawkins. Mr. Amon also testified to numerous related party transactions and potential breaches of fiduciary duties by principals of the Defendants.

Mr. Harmon's deposition designations contain evidence of numerous additional breaches of the Funding agreements by ACT, some commencing immediately following the closing of the 2007 Funding. Mr. Harmon also testified to various misuses of Funding proceeds and other company assets by Mr. Hawkins and others at ACT.

Nelson is a major customer of ACT and Mr. Towell is its Manager. ACT's contracts with Nelson were designated to the Lockbox, and served as the basis for a substantial portion of the sums loaned to ACT under the 2008 Funding. Mr. Towell's deposition designations address repeated occasions in which Mr. Hawkins directed Nelson to make payments either directly to ACT or to third parties rather than the Lockbox. Those payments violated the Lockbox Agreement and Line of Credit Agreement, and more recently, this Court's Orders.

**F.**    **Plaintiffs' Trial Exhibits**

In addition to copies of the relevant agreements, notices of default and acceleration, and ACT's SEC filings, Plaintiffs' trial exhibits include documents referenced in direct testimony and depositions, or that Plaintiffs may otherwise use at trial. These documents again confirm Defendants' serial defaults and Plaintiffs' entitlement to relief.

## ARGUMENT

**I.**    **THE EVIDENCE AND ADMISSIONS DEMONSTRATE PLAINTIFFS' ENTITLEMENT TO ENTRY OF JUDGMENT**

Defendants repeatedly breached the Funding agreements. Plaintiffs are entitled to entry of judgment in accordance with the default remedies provided therein.

**A.**    **Plaintiffs Are Entitled To Entry Of Judgment Against Defendants In The Amount Of The Default Payments Due Under Loan Agreements**

Following Defendants' admitted breaches of the Funding agreements, counsel for Plaintiffs delivered valid default notices and accelerated payment of both the Debentures and the Notes according to their terms. (A ¶¶ 61, 62, 82, 83, 91, 108, 109; P. Exs. 2, 11, 23-24, 28, 30; Hathorn Aff., ¶¶ 41-42, 70-72.) "Acceleration clauses exist solely for the benefit of the mortgagee and are enforced according to their terms" George H. Nutman, Inc. v. Aetna Bus. Credit, Inc., 115 Misc. 2d 168, 169 (N.Y. Sup. Queens Co. 1982).

Upon acceleration, Defendants became liable for payment of the Default Amount and Mandatory Redemption Amount as defined in the Debentures and Notes.  (A ¶ 63; P. Exs. 2, 11; Hathorn Aff., ¶¶ 72-73.)  Defendants at no point have cured their defaults.  (A ¶¶ 65, 92, 94; Hathorn Aff., ¶ 44.)

Accordingly, Plaintiffs are entitled to entry of judgment against Defendants for Default Amounts and Mandatory Redemption Amounts due and payable under the Debentures and Notes, together with interest and attorneys' fees.

**B.      Plaintiffs Are Entitled To A Permanent Injunction Directing
Defendants To Turn Over All Assets Constituting Collateral**

The Secured Creditors have a valid and subsisting security interest in the Collateral as evidenced and established by the following agreements: the 2007 Security Agreement, the Patent Security Agreement, the 2008 Security Agreement, and the Intellectual Property Security Agreement.  In light of Defendants' admitted defaults, Plaintiffs' have the right to take possession and foreclose upon their Collateral.

When the debtor of a secured party "defaults, the secured party has the right to 'reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure.'"  Fundex Capital Corp. v. Reichard, 172 A.D.2d 420, 421 (1st Dep't 1991) (quoting N.Y. UCC § 9-501(1), as amended, N.Y. UCC § 9-601(a)(1)) (McKinney's 2008).

The right of a secured creditor to foreclose and/or reduce its claims to judgment "are cumulative and may be exercised simultaneously."  N.Y. UCC § 9-601(c).  Similarly, the rights upon default provided under the UCC are cumulative and in addition to "those provided by agreement of the parties."  N.Y. UCC § 9-601(a).

"After default, a secured party: (1) may take possession of the collateral," either pursuant to judicial process or without judicial process, and "[i]f so agreed . . . may require the debtor to assemble the collateral and make it available to the secured party at a place designated by the secured party . . . ." N.Y. UCC § 9-609 (a)-(c).

In the present case, in the event of default, Defendants' agreed pursuant to the 2007 and 2008 Security Agreements that Plaintiffs could:  (1) take possession of and foreclose on the Collateral; (2) operate the business of each of the Defendants; (3) assign, sell, lease or otherwise dispose of and deliver all or any part of the Collateral; (4) notify any account debtors and obligors under instruments or accounts to make payments directly to the Secured Lenders; and (5) transfer any or all intellectual property registered in the name of any Defendant at the United States Patent and Trademark Office and/or Copyright Office into the name of the Secured Lenders.  (P. Exs. 4, § 8, 13, § 8.)

Further, Defendants agreed to assemble and make available the Collateral to Plaintiffs upon default.  Section 8(a)(i) of the 2007 Security Agreement states that upon default:

> The Secured Parties shall have the right to take possession of the Collateral and, for that purpose, enter, . . . any premises where the Collateral, or any part thereof, is or may be placed and remove the same, and each Debtor shall assemble the Collateral and make it available to the Secured Parties at places which the Secured Parties shall reasonably select, . . . and make available to the Secured Parties, without rent, all of the such Debtor's respective premises and facilities for the purpose of the Secured Parties taking possession of, removing or putting the Collateral in saleable or disposable form.

(P. Ex. 4, § 8(a)(i).)  Section 8(a)(i) of the 2008 Security Agreement provides identical rights to the Collateral Agent upon default to possess and foreclose on the assets on behalf of the Secured Lenders.  (P. Ex. 13, § 8(a)(i).)

Given Defendants' numerous defaults, Plaintiffs are entitled to entry of a permanent injunction directing Defendants to assemble and make available to Plaintiffs all assets constituting Collateral for the purpose of possession, lawful disposition or sale.

## II.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ORDER TO PREVENT DEFENDANTS FROM MISAPPROPRIATING, TRANSFERRING OR DISSIPATING THE COLLATERAL

In a hearing before the Court on January 22, 2009, the Court presumptively ordered the hearing on January 29, 2009 to be consolidated with a hearing on the merits. Given the Court's presumptive order of consolidation, we provide this discussion of the requisite elements for preliminary injunctive relief in the event that the Court withdraws its consolidation order.

In order to obtain a preliminary injunction, the Second Circuit requires the moving party to demonstrate: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988). Plaintiffs readily satisfy each of the requisite elements for grant of a preliminary injunction.

### A.    Absent Injunctive Relief, Plaintiffs Will Suffer Irreparable Harm From The Imminent Misappropriation And Dissipation Of The Collateral

#### 1.    Plaintiffs Will Suffer Irreparable Harm If Not Allowed To Protect The Collateral Pursuant To Their Rights In The Loan Agreements

"A party can show irreparable harm by demonstrating that without the preliminary injunction, there is a substantial likelihood that the judgment will be uncollectible...." SEC v. Princeton Econ. Int'l. Ltd., 73 F. Supp. 2d 420, 425 (S.D.N.Y. 1999); see also Republic of the Philippines v. Marcos, 806 F.2d 344, 356 (2d Cir. 1986) ("preliminary injunctions are proper to prevent a defendant from making a judgment uncollectible"); Gelfand

10

v. Stone, 727 F. Supp. 98, 100 (S.D.N.Y. 1989) ("intent to frustrate a judgment will satisfy the requirement . . . of irreparable harm").

Courts have held that secured lenders, such as Plaintiffs, are entitled to injunctive relief in order to protect their rights to assets guaranteed under a security agreement. See Computerland Corp. v. Batac, Inc., 1988 WL 140816, at *3 (S.D.N.Y. Dec. 16, 1988) (granting plaintiff injunctive relief to protect "its security interest and to prevent dissipation in the value of its collateral"); Am. Sav. Bank, F.S.B., v. Cheshire Mgmt. Co., 693 F. Supp. 42, 49 (S.D.N.Y. 1988) (enjoining disposition of assets "in which the plaintiff has a secured interest").

In accordance with this authority, Plaintiffs are entitled to injunctive relief to prevent the transfer or dissipation of the Collateral. As described previously, the Funding Agreements provide Plaintiffs with comprehensive rights to possess, operate and foreclose upon all of Defendants' assets and business in the event of default. Absent the grant of a preliminary injunction to preserve these assets and this business, Plaintiffs may very well have no assets to possess and foreclose. The Court record reflects that Defendants have disposed of assets before in contravention of the parties' Funding Agreements, including Defendants' admitted diversion of funds that they were obligated to have deposited in the lockbox pursuant to the Lockbox Agreement and the Line of Credit Agreement. (A ¶¶ 47, 76, 93, 120, 126; P. Exs. 12, 19-21; Hathorn Aff., 61-62, 64.)

### 2. ACT's Contractual Admissions Of Irreparable Harm In The Event Of Default Further Establish Plaintiffs' Right To Injunctive Relief

The Funding Agreements are replete with concessions by Defendants that their default will result in irreparable harm and thereby warrant the granting of injunctive relief. Contractual acknowledgements of irreparable harm in the event of breach "might arguably be viewed as an admission" by a defendant that "plaintiff will suffer irreparable harm." Ticor Title

Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999) (granting injunction); see also Estee Lauder

Cos. v. Batra, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006) (same); Nat'l Elevator Cab & Door

Corp. v. H & B, Inc., 2008 WL 207843, at *6 (E.D.N.Y. Jan. 24, 2008) (defendant "expressly

admitted that 'money damages would not be a sufficient remedy'").

      At minimum, such admissions are given "great weight," even if they are not

dispositive. Alpha Capital Aktiengesellschaft v. Advanced Viral Research, 2003 WL 328302, at

*5 (S.D.N.Y. Feb. 11, 2003); see also N. Atlantic Instruments, Inc. v. Haber, 188 F.3d 38, 49 (2d

Cir. 1999) (finding irreparable harm based, in part, on concession in parties' contract); Netherby

Ltd. v. Jones Apparel Group, Inc., 2007 WL 1041648, at *20 (S.D.N.Y. Apr. 5, 2007) (finding

concession of irreparable harm "weighs in favor of plaintiff").

      In the present case, the loan agreements collectively contain multiple contractual

concessions that in the event of Defendants' default, Plaintiffs will suffer irreparable harm.  For

example, the Line of Credit Agreement provides: "The Company acknowledges that a

breach…will cause irreparable harm to each Buyer…[and] that each Buyer shall be entitled . . .

to an injunction or injunctions to prevent or cure any breaches."  (P. Ex. 10, § 10(b)(ix), 14(p);

see also, e.g., P. Ex. 1, § 9(p).)  These repeated contractual admissions, as well as the relevant

evidence, warrant a finding of irreparable harm.

**B.**    **Plaintiffs Will Succeed On The Merits Given Defendants'**
        **Admitted And Undisputed Defaults Under The Loan Agreements**

      In addition to irreparable harm, Plaintiffs can readily establish a likelihood of

success on the merits.  To establish entitlement to relief, Plaintiffs need only demonstrate a

default.  Defendants repeated defaults are not in dispute.  Pursuant to the terms of the Funding

agreements, Plaintiffs have the right to possess and foreclose on the Collateral upon an Event of

Default.  Plaintiffs can demonstrate not just a likelihood, but a virtual certainty, that they will ultimately prevail on the merits of this case.

 **C.**  <u>**The Balance Of Hardships Tips Decidedly In Plaintiffs' Favor**</u>

    The balance of hardships in this case further mandates injunctive relief. Defendants' admitted and apparent defaults, and the risk to Plaintiffs' Collateral absent relief, clearly tip the balance in Plaintiffs' favor.

**III.** **DEFENDANTS' PUTATIVE DEFENSES AND COUNTERCLAIM**
   **ARE LEGALLY AND FACTUALLY DEFECTIVE**

 **A.**  <u>**Defendants' Purported Defenses Are Legally Unsustainable**</u>

    As a threshold matter, courts will summarily dismiss "[a]ffirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts." <u>Schecter v. Comptroller of the City of New York</u>, 79 F.3d 265, 270 (2d Cir. 1996); <u>see also</u> <u>Rathnam v. Chauhan</u>, 2008 WL 2369758, at *6 (N.Y. Sup., Suffolk Co. June 3, 2008) (dismissing affirmative defenses "as they are really merely conclusory denials of plaintiff's claims disguised as affirmative defenses").  Here, each of Defendants' four putative affirmative defenses is vague, conclusory, factually unsupported and legally unsustainable.

    As a second threshold matter, the Debentures preclude Defendants from asserting legal defenses in any lawsuit to enforce an Event of Default unless they post a bond to ensure payment of a possible judgment to Plaintiffs.  (P. Ex. 2, § 8(b).)  Defendants have posted no such bond in connection with the affirmative defenses or counterclaim asserted here.  Courts construing New York law routinely affirm waivers of defenses and risk allocation determinations between parties to written instruments and guarantees.  <u>See</u> <u>Ursa Minor Ltd. v. AON Financial Products, Inc.</u>, 2000 WL 1010278, at *6 (S.D.N.Y. July 21, 2000) (collecting cases); <u>Compagnie Financiere de CIC et de l'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 188

F.3d 31, 35 (2d Cir. 1999) (unconditional waiver of defenses in guarantee enforceable);

Woodward & Dickerson v. Kahn, 767 F. Supp. 530 (S.D.N.Y. 1991) (same).  Accordingly,

Defendants' purported defenses asserted to their numerous breaches under the Debentures and

2007 Funding agreements should be stricken.

### 1.        Defendants' "Unclean Hands" Defense Fails As A Matter Of Law

The doctrine of unclean hands "is never used unless the plaintiff is guilty of

immoral, unconscionable conduct and even then only when the conduct relied on is directly

related to the subject matter in litigation and the party seeking to invoke the doctrine was injured

by such conduct." Nat'l Distillers & Chem. Corp. v. Seyopp Corp., 17 N.Y.2d 12, 15-16 (1966);

see also Prudential Sec. Credit Corp v. Tevee Toons, Inc., 5 A.D.3d 226, 227 (1st Dep't 2004)

(rejecting unclean hands defense in foreclosure action where bad faith allegations, "show nothing

more than commercially reasonable conduct on the part of a lender seeking to recover as much of

its loan as possible"); 4 Hour Wireless v. Smith, 2002 WL 31654963, at *2 (S.D.N.Y. Nov. 22,

2002) ("exercising contract rights does not constitute bad faith" as a matter of law).

Courts will accordingly reject an unclean hands defense in a foreclosure action

unless the defendant can establish a close nexus between its failure to perform and the

challenged conduct. See Sec. Pac. Mortgage & Real Estate Serv., Inc. v. Canadian Land Co. of

Am., N.V., 690 F. Supp. 1214, 1224 (S.D.N.Y. 1988) (rejecting unclean hands defense in

foreclosure action where defendant failed to connect default to challenged conduct); Connecticut

Nat'l Bank v. Peach Lake Plaza, 204 A.D.2d 909, 910-11 (3d Dep't 1994) (affirming rejection of

unclean hands defense in foreclosure action in absence of "admissible evidence showing that

plaintiff's conduct was immoral or unconscionable").

Here, Defendants' putative unclean hands defense merely recites a vague and

conclusory list of alleged and imagined wrongs.  To the extent the substance of these allegations

is discernable, however, they fail entirely to meet the legal requirements of sustaining the defense.

First, Defendants allege, on information and belief, that Plaintiffs, or others, at some point prior to the 2007 Funding, traded in ACT's stock with the intent of lowering the price. (P. Ex. 22, ¶¶ 9-11.) Mr. Hawkins, however, admitted during his deposition that he is aware of no evidence to support this allegation. (Hawkins Tr. at 270:25-271:25.) Even were it supported by any credible evidence, no conceivable connection between this conduct and Defendants' defaults under the Funding agreements is either alleged or discernable.

Second, Defendants allege that the 2007 Funding provided the Secured Lenders the right to make additional investments and that, when Defendants sought to obtain financing from third parties, the Secured Lenders declined to waive their contractual rights. (P. Ex. 22, ¶¶ 12-16.) A secured lender, of course, is "fully within his rights in refusing to consent to refinancing upon terms he [finds] unacceptable." Red Tulip, LLC v. Neiva, 44 A.D.3d 204, 212 (1st Dep't 2007). "In fact, a lender may exercise any contractual right without breaching some duty of 'good faith.'" Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp., 83 F. Supp. 2d 384, 391 (S.D.N.Y. 2000). Defendants' allegations to the contrary are legally unsustainable.

Third, Defendants allege that Plaintiffs' delay in providing information delayed Defendants' filing of a registration statement with the SEC. (P. Ex. 22, ¶ 17.) Even were this supported by credible evidence, and it is not, Defendants can neither allege nor establish any conceivable connection between this conduct and Defendants' defaults under the Funding agreements.

Fourth, Defendants allege that: (a) Mr. Dawe had a purportedly undisclosed conflict of interest; and (b) that Messrs. Dawe and Johnson took various unidentified actions

allegedly "detrimental" to Defendants and communicated with other ACT board members concerning the appropriate governance of ACT. (P. Ex. 22, ¶¶ 18-25.) Sworn testimony will demonstrate that Mr. Dawe had no such conflict. (Dawe Aff., ¶ 15.) Further, Mr. Hawkins admitted during his deposition that communications among board members are entirely proper. (Hawkins Tr. at 242:23-244:8, 245:18-246:8.) Moreover, Defendants again can neither allege nor establish any conceivable connection between this conduct and Defendants' defaults under the Funding agreements.

Fifth, Defendants allege, on information and belief, that Plaintiffs delayed funding the 2008 Funding in order to force Defendants' default. (P. Ex. 22, ¶ 26-27.) Defendants, however, admit that Defendants' misrepresentations artificially inflated the amount of initial funding pursuant to the 2008 and that Defendants were in breach of the Lockbox Agreement. (A ¶ 93.) Under these admitted circumstances, any "delay" in additional funding following these defaults would have been not only justified, but contractually mandated.

In addition, the contention that Plaintiffs intended and sought to force a default under the 2007 Funding by loaning Defendants an additional $2 million under the 2008 Funding defies common sense. If Plaintiffs wanted to allow Defendants to default, they would not have agreed to provide the additional funding.

Finally, Defendants allege that Plaintiffs breached the Lockbox Agreement by withdrawing 100% of the sole payment deposited therein. (P. Ex. 22, ¶ 28.) The Lockbox Agreement and Line of Credit Agreement, however, entitle Plaintiffs to sweep the funds from the lockbox on a daily basis. (P. Exs. 10, 12.) Specifically, Section 2(b) of the Lockbox Agreement states that:

> The Lenders and the Borrower hereby instruct the Bank, and the Bank agrees, on each Business Day to transfer, via federal wire

16

> transfer or ACH, the total of (A) all deposits received in the
> Lockbox Account for the prior Business Day, minus (B) the sum of
> all outstanding and unpaid Charges (as hereinafter defined) or
> Chargebacks (as hereinafter defined) which the Bank is permitted
> to debit or offset against deposits . . . . The Agent, the Lenders and
> the Borrower hereby irrevocably instruct the Bank, and the Bank
> agrees, on each Business Day to transfer, via federal wire transfer
> the available balance in the Lockbox Account to an account at the
> Bank in the name of the Agent.

(P. Ex. 12, § 2(b).)

> The Line of Credit Agreement, Section 6(c), further states:

> Sweep of Funds from Lockbox. . . . The Company agrees that
> 100% of the funds out of the Lockbox Account shall be disbursed
> to the Lenders . . .and such funds shall be applied first toward
> interest due on the Notes, next toward reduction of the principal
> amount of the Notes, until paid in full, and any remaining amounts
> shall be disbursed to the Company.

(P. Ex. 10, § 6(c).)

Defendants' suggestion that Plaintiffs' compliance with the unambiguous terms of

the parties' agreements somehow constituted "unclean hands," is frivolous.

In sum, Defendants' affirmative defense styled as "unclean hands" is wholly and

entirely unsustainable.

## 2.    Defendants' Breach Of Contract Defenses Fail As A Matter Of Law

Defendants' second and third putative affirmative defenses assert breach of

contract by Plaintiffs and violation of the covenant of good faith and fair dealing, each allegedly

excusing the admitted defaults by Defendants. "Unfortunately, [Defendants] do not specify what

provisions were breached, leaving only a claim predicated on a breach of the alleged obligation

of good faith and fair dealing that supposedly inheres in every contract." Lazar's Auto Sales, 83

F. Supp. 2d at 391.

Any implied covenant of good faith and fair dealing, however, "does not extend so far as to undermine a party's 'general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.'" Red Rock Commodities, Ltd. v. ABN-AMRO Bank, N.A., 1995 WL 714349, at *3 (S.D.N.Y. Dec. 5, 1995) (quoting M/A-COM Sec. Corp. v. Galese, 904 F.2d 134, 136 (2d Cir. 1990)).

Further, "[n]o implied covenant may conflict with the express terms of a contract." Id.; see also Lazar's Auto Sales, 83 F. Supp. 2d at 391 ("a lender may exercise any contractual right without breaching some duty of 'good faith'"); Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc., 192 A.D.2d 1066, 1067 (4th Dep't 1993) ("A financing institution does not act in bad faith when it exercises its contractual right to terminate financing."); In re Teletronics Servs., Inc., 29 B.R. 139, 170 (Bankr. E.D.N.Y. 1983) ("a creditor normally has an unqualified right to call a loan when due, to refuse to extend a loan for any cause or no cause at all, and to lawfully enforce collection").

As neither of Defendants' affirmative defenses purporting to sound in breach of contract identify any alleged breach by Plaintiffs of any of the Funding agreements, they should be summarily dismissed. See Schecter v. Comptroller of the City of New York, 79 F.3d 265, 270 (2d Cir. 1996). To the extent that these defenses purport to incorporate the allegations set forth in Defendants' "unclean hands" defense, they fail for the same reasons discussed above.

### 3.    Defendants' Putative Usury Defense Is Unavailable As A Matter Of Law

Under unambiguous New York law: "No corporation shall hereafter interpose the defense of usury in any action." N.Y. GOL § 5-521(1); see also FDIC v. Julius Richman, Inc., 666 F.2d 780, 781 (2d Cir. 1981) ("Corporations, however, may not assert a usury defense."); McNellis v. Merchs. Nat'l Bank & Trust Co. of Syracuse, N.Y., 390 F.2d 239, 241 (2d Cir. 1968) ("for many years corporations in New York have been barred from claiming usury").

Defendants, who are all corporate entities, therefore cannot assert a usury defense in this action.

### B.    Defendants' Purported Counterclaim Fails

Defendants' counterclaim states, in its entirety, as follows:

Thirty-fourth: Plaintiffs' action breached the covenant of good faith and fair dealing in both the 2007 Loan Agreement and the 2008 Line of Credit Agreement.

Thirty-fifth: Plaintiffs' breach of contract has caused defendants damages.

Thirty-sixth: Plaintiffs conspired with each other in the matters set forth in paragraphs ninth through twenty-eighth.

(P. Ex. 22, ¶¶ 34-36.)

As with Defendants' putative affirmative defenses asserting breach of contract, this putative counterclaim:  (1) fails entirely to identify any alleged breach of contract; (2) fails to state a claim as a matter of law; and (3) to the extent it purports to incorporate any of the allegations set forth in Defendants' affirmative defenses, suffers the same fatal infirmities of law and fact discussed above.

### CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter an Order granting Plaintiffs the following relief:

A declaration and preliminary and permanent injunction:  (a) directing Defendants to marshal all assets defined as Collateral under the 2007 and 2008 Funding agreements and turn those assets over to Plaintiffs; (b) allowing Plaintiffs to take all steps to sell or otherwise dispose of or foreclose on their Collateral in accordance with their rights as secured lenders under the Uniform Commercial Code and other governing law; (c) allowing Plaintiffs to operate Defendants' business and exercise all other rights provided under the 2007 and 2008 Funding

agreements; and (d) enjoining Defendants from transferring, pledging, hypothecating, encumbering, licensing, selling or otherwise disposing of "Collateral;"

Damages in the amounts due under the Debentures, Notes, and other transaction documents, together with interest, costs and attorneys' fees, as provided for by the 2007 and 2008 Funding agreements; and

All reasonable attorney fees, costs, expenses and interest, in accordance with their rights under the 2007 and 2008 Funding agreements.

January 23, 2009

DLA PIPER LLP (US)

By: _____
Douglas A. Rappaport
douglas.rappaport@dlapiper.com
Peter D. Sharp
peter.sharp@dlapiper.com
1251 Avenue of the Americas
New York, New York  10020-1104
Tel. (212) 335-4500
Fax. (212) 335-4501
Attorneys for Plaintiffs

42327827

20