```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
ROSWELL CAPITAL PARTNERS LLC, et al.,    :
                                         :
                    Plaintiffs,          :    08 Civ. 10647 (DLC)
                                         :
           -v-                           :    OPINION & ORDER
                                         :
ALTERNATIVE CONSTRUCTION TECHNOLOGIES,   :
et al.,                                  :
                    Defendants.          :
----------------------------------------X
```

Appearances:

For Plaintiffs:
Douglas A. Rappaport
Peter D. Sharp
DLA Piper US LLP
1251 Avenue of the Americas
New York, NY 10020

For Defendants:
Harry H. Wise, III
Law Offices of Thomas G. Amon
250 West 57th Street, Suite 1316
New York, NY 10107

DENISE COTE, District Judge:

This Order considers the applicability of a requirement that defendants post a bond before they interpose any defense arguing that plaintiffs have committed a "violation of law." Plaintiffs Roswell Capital Partners, LLC ("Roswell"), as "Collateral Agent," BridgePointe Master Fund Ltd. ("BridgePointe"), CAMHZN Master LDC ("CAMHZN"), and CAMOFI Master LDC ("CAMOFI") (collectively, "Plaintiffs") have brought

this lawsuit to foreclose upon their security interests in Alternative Construction Technologies Inc. ("ACT"), and twelve of its subsidiaries (collectively, "Defendants") and for breach of various loan and related agreements.  The breaches concern rounds of funding that Defendants procured from Plaintiffs in 2007 (the "2007 Funding") and 2008 (the "2008 Funding").  Among other agreements, the 2007 Funding included a Securities Purchase Agreement dated June 30, 2007, in which BridgePointe, CAMHZN, and CAMOFI agreed to purchase from ACT a total of $4 million in senior secured convertible debentures (the "Debentures") and received warrants to purchase ACT common stock.  Section 8(b) of the Debentures, entitled "Posting of Bond," provides that

> [i]n the event that any Event of Default occurs . . . [ACT] <u>may not raise as a legal defense</u> . . . or justification to such Event of Default any claim that [any Plaintiff] has been engaged in <u>any violation of law</u>, unless [ACT] has posted a surety bond . . . .

(Emphasis supplied).  Plaintiffs filed a complaint and brought an application for an Order to Show Cause with Temporary Restraining Order ("TRO") on December 9, 2008.  Later that day, a hearing with both parties was held, the TRO was entered, and a preliminary injunction hearing was set for January 29, 2009.

Defendants' answer and counterclaim, filed on January 12, had included four separate affirmative defenses, one of which is

2

also styled as a counterclaim: unclean hands, frustration of performance, breach of the covenant of good faith and fair dealing (affirmative defense and counterclaim), and criminal usury.  One of the factual allegations supporting the affirmative defenses and counterclaim charged Plaintiffs with engaging in "unlawful" trading of ACT stock "with the intention of lowering its price."

Following a conference with both parties on January 23 and a January 26 submission from Defendants opposing consolidation, an Order of January 26 consolidated the preliminary injunction hearing with a trial on the merits for the issue of breach of contract only.  Final judgment with regard to the affirmative defenses and counterclaim was reserved for a trial on the merits.

In their memorandum of law submitted in advance of the preliminary injunction hearing, Plaintiffs asked that Section 8(b) of the Debentures (the "bond requirement") be enforced such that Defendants could not interpose any of their affirmative defenses or their counterclaim without posting a bond. Defendants declined to address the bond issue in their pre-hearing submissions and submitted sparse evidence and legal support for their affirmative defenses and counterclaim. Following the preliminary injunction hearing, a January 30 Opinion and Order found that Defendants had breached their

obligations under the 2007 and 2008 Funding, including the Debentures.  <u>Roswell Capital Partners LLC v. Alternative Construction Technologies</u>, No. 08 Civ. 10647 (DLC), 2009 WL 222348, at *9 (S.D.N.Y. Jan. 30, 2009) ((the "January 30 Opinion").  Familiarity with the January 30 Opinion is assumed.  With regard to the bond requirement, the January 30 Opinion noted that "[s]everal of the [affirmative] defenses would appear to be implicated by the bond requirement."[1]  <u>Id.</u> at *10.

A Preliminary Injunction Order was entered on February 3, 2009.  It required Defendants to post a bond or surety in the amount of the outstanding principal and interest on the Debentures, $5,522,108.84, as a condition to continuing to prosecute the affirmative defenses and/or counterclaim.  In the event that Defendants contended that the bond requirement did not apply to any of their affirmative defenses or counterclaim, they were ordered to make a submission by February 9, 2009, with a response from Plaintiffs due February 13.  Both parties made timely submissions.

## DISCUSSION

The parties' submissions primarily concern the meaning of Section 8(b)'s use of "violation of law" and the scope of

---

[1] The January 30 Opinion also described the considerable legal and factual infirmities plaguing Defendants' affirmative defenses and counterclaim.  January 30 Opinion at *11-*16.

4

affirmative defenses and counterclaim to which it will apply. The affirmative defenses and counterclaim encompass criminal statutory violations, violations of securities laws, violations of common law, and equitable defenses. Defendants also argue that the bond requirement should be voided on public policy grounds because it exculpates Plaintiffs from liability for criminal conduct.

1. The Meaning of "Violation of Law"

At a minimum, the parties agree that "violation of law" applies to criminal conduct, and would thus apply to Defendants' attempt to advance a criminal usury defense.[2] Defendants, however, argue that the phrase requires a bond <u>only</u> in the event that they argue that Plaintiffs have engaged in criminal conduct. Plaintiffs advocate a broader meaning of the phrase, believing it to apply to any attempts to assert any violation of statutory or common law, including "common law duties regarding lender liability, fiduciary obligations, and the implied duty of good faith and fair dealing" -- that is, to the entirety of the affirmative defenses and counterclaim.

---

[2] Defendants seek to avoid posting a bond in the event they pursue a criminal usury argument by claiming that the bond requirement as applied to allegations of criminal conduct must be set aside on public policy grounds. This argument is addressed below.

Under New York law, "[a] contract should be construed so as to give full meaning and effect to all of its provisions." Chapman v. New York State Div. for Youth, 546 F.3d 230, 236 (2d Cir. 2008) (citation omitted). "The cardinal principle for the construction and interpretation of ... contracts ... is that the intentions of the parties should control." SR Intern. Business Ins. Co. v. World Center Properties, LLC, 467 F.3d 107, 125 (2d Cir. 2006) (citation omitted). In ascertaining the purpose or intent of the parties, "lest form swallow substance, [the] goal must be to accord the words of the contract their fair and reasonable meaning." Sutton v. East River Sav. Bank, 55 N.Y.2d 550, 555 (N.Y. 1982) (citation omitted). "An interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (citation omitted). At the same time, "there is no basis to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." RM 14 FK Corp. v. Bank One Trust Co., N.A., 37 A.D.3d 272, 274 (1st Dep't 2007) (citation omitted). "[T]he court must be careful not to alter the terms of the agreement. The parties having agreed upon their own terms and conditions, the courts cannot change them and must not permit them to be violated or disregarded." Metropolitan Life Ins. Co.

6

v. RJR Nabisco Inc., 906 F.2d 884, 889 (2d Cir. 1990) (citation omitted).  Also, "[w]here one interpretation is broader than another, courts should not apply the broader interpretation absent a clear manifestation of intent." Bank of New York v. Amoco Oil Co., 35 F.3d 643, 662 (2d Cir. 1994).

Neither party attempts to introduce extrinsic evidence to prove that its interpretation of "violation of law" is correct, nor do the parties present competing versions of their intent or objectives.  See SR Intern. Business Ins. Co., 467 F.3d at 125-26.  Rather, both parties rely on dictionary definitions and case law interpreting similar phrases and explaining canons of interpretation.

Plaintiffs and Defendants cite Black's Law Dictionary to support the claims that each of their respective definitions of "violation of law" is the plain and unambiguous meaning of the contractual provision.  Defendants select one restrictive definition each of "violation" and "law," while Plaintiffs point to the multiple definitions available for each term.  Black's defines "violation" as "an infraction or breach of the law; a transgression," as well as "[t]he act of breaking or dishonoring the law; the contravention of a right or duty."  Black's Law Dictionary (8th Ed. 2004).  Black's definitions of "law" include, inter alia, "[t]he aggregate of legislation, judicial precedents, and accepted legal principles; the body of

7

authoritative grounds of judicial and administrative action," "a statute," and "common law (law but not equity)."  Id.  The various definitions in Black's do not reveal a clear and unambiguous meaning of "violation of law"; a choice of meanings for each term is possible.

Case law interpreting the meaning of the term further supports the idea that an unambiguous definition of "violation of law" does not exist; rather, the definition of the term is highly context-specific.  In several instances, courts and legislatures have used the term to refer to a narrower group of violations than Plaintiffs assert is the unambiguous meaning of the term.  New York's Labor Law, for example, separates the terms "violation of law, rule or regulation," suggesting that, in that statute, "violation of law" is not all-encompassing.  N.Y. Lab. Law § 740(2)(a) (McKinney 2006); Bordell v. General Elec. Co., 622 N.Y.S.2d 1001, 1002 (3d Dep't 1995).  The Second Circuit, interpreting a California statute, has found that a "negligent misrepresentation," which could qualify as a "violation of law" under Plaintiffs' definition as a possible breach of a duty in tort, was in fact distinct from a "violation of law."  Tokio Marine and Fire Ins. Co., Ltd. v. McDonnell Douglas Corp., 617 F.2d 936, 940 (2d Cir. 1980).

While case law demonstrates that "violation of law" does not unambiguously refer to any sort of transgression or breach,

8

neither is there support in case law or statute for Defendants' position that the phrase refers only to criminal wrongdoing. Defendants cite two cases, Meuwissen v. Department of Interior, 234 F.3d 9 (Fed. Cir. 2001), and Rox Coal Co. v. W.C.A.B., 768 A.2d 384 (Pa. Commw. Ct. 2001), involving the construction of the term within specific statutes not at issue here.  In neither case is the term explicitly limited to violations of criminal law.[3]

Reading Section 8(b) to apply to require a bond only for a claim that Plaintiffs have engaged in either criminal or civil violations of a statute accords the term "violation of law" its fair and reasonable meaning, fulfilling the purpose of contract interpretation described in Sutton, 55 N.Y.2d at 555.  Holding that "violation of law" must be a violation of criminal law, as Defendants urge, is too narrowing a construction.  Adopting such a limited definition would require imposing an additional term, "criminal," absent from the plain language of the contract. Courts should refrain from rewriting the parties' contract or imposing additional terms.  See Metropolitan Life Ins. Co., 906 F.2d at 889; RM 14 FK Corp., 37 A.D.3d at 274.  On its face, "violation of law" includes not just violations of the criminal

---

[3] Meuwissen holds that an incorrect judicial decision is not a violation of law as defined in the Whistleblower Protection Act of 1989.  234 F.3d at 13-14.  Rox Coal states that a "summary conviction" qualifies as a violation of law under the Pennsylvania Workers' Compensation Act.  768 A.2d at 391.

law, but violations of other laws, such as the securities laws and regulations, which provide for civil, not criminal, liability in some circumstances.

Breaching an implied covenant or having unclean hands, however, two of the affirmative defenses, do not conventionally indicate that law has been violated.  Plaintiffs' comprehensive definition would appear to render the "violation of law" limitation in the Debentures nearly meaningless, requiring a bond in all but a few limited circumstances, such as defenses of impossibility and failure of a required condition.  Constructions rendering contractual language superfluous should be avoided.  LaSalle Bank Nat'l Ass'n, 424 F.3d at 206.  The canon supporting narrower interpretation when meaning is ambiguous also supports a narrower reading of the bond requirement here.  Bank of New York, 35 F.3d at 662.

Plaintiffs' overly broad definition may arise from their analysis of Black's, which disaggregates the terms "violation" and "law," in order to arrive at a broad definition for the entire phrase that encompasses all definitions of each term.  "Violation of law," however, most reasonably has a more specific meaning when considered as a complete phrase, rather than as individual words.  Plaintiffs do not consider the possibility that the "violation" may modify the term "law" in a way that

10

limits the meaning of the entire phrase to include its commonly understood reference to statutory law.

2. Validity of Bond Requirement as a Matter of Public Policy

Defendants also argue that the bond requirement effectively exculpates Plaintiffs from liability for criminal conduct and is therefore void under New York law.  Plaintiffs assert that a bonding requirement is not equivalent to exculpation, and that the frivolousness of Defendants' criminal usury argument militates in favor of requiring them to post a bond before continuing with their claim.

As noted by Defendants, exculpatory clauses are unenforceable when they grant immunity for gross negligence or intentional misconduct.  <u>Kalisch-Jarcho, Inc. v. City of New York</u>, 58 N.Y. 2d 377, 384-85 (N.Y. 1983).  Indemnification, which Defendants do not address, is permitted for a party's gross negligence, but not for intentional conduct.  <u>St. Paul Fire and Marine Insurance Company v. Universal Builders Supply</u>, 409 F.3d 73, 86-87 (2d Cir. 2005).

Defendants cite no law that supports their proposition that a bond requirement is the equivalent of an exculpatory clause. The purpose of a bond requirement -- to ensure that a party will use its assets to pay costs owed should it fail to prevail in a lawsuit -- is different from that of an exculpatory clause,

11

whose purpose is to remove liability.  See Selletti v. Carey, 173 F.3d 104, 112 (2d Cir. 1999) (purpose of bond requirement). Bond requirements occur throughout both New York and federal law.  See, e.g., N.Y. Ins. Law § 1213[c] [1][A] (requiring a bond that is "sufficient to secure payment of any final judgment which may be rendered in the proceeding")(cited in Levin v. Intercontinental Cas. Ins. Co., 95 N.Y.2d 523, 529 (N.Y. 2000); N.Y. C.P.L.R. 6312(b)(requiring plaintiff to post a bond before bringing a preliminary injunction); Kim v. Central Communication Services, Inc., 560 N.Y.S.2d 291, 291 (1st Dep't. 1990) (upholding imposition of a bond in proceedings to vacate default judgment); Local Civil Rule 54.2 (permitting a court to "order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate").  If a bond requirement is truly equivalent to the kind of exculpatory clause found to be in "contravention of acceptable notions of morality," by the Court of Appeals in Kalisch-Jarcho, it seems unlikely that such requirements would proliferate throughout the legal system as they have.

3. Applicability of the Bond Requirement to the Affirmative
   Defenses and Counterclaim as Pled

Having concluded that the Debentures require a bond before Defendants may attempt to justify or defend against their

12

default by claiming that Plaintiffs have committed a statutory violation, the specific affirmative defenses and counterclaims to which the bond requirement applies must next be determined. It is uncontested that the requirement applies to the criminal usury affirmative defense, even under Defendants' narrow reading of Section 8(b).

The bond requirement also shall apply to Defendants' affirmative defenses that allege that Plaintiffs engaged in "unlawful" short-selling and manipulation of their stock price. In their brief opposing a bond requirement, Defendants assert that their short-selling allegations arise from breach of contract, not the securities laws.  As pled, the Defendants have alleged that "Plaintiffs' trading was unlawful and caused injury to defendants."  As such trading would necessarily violate the securities laws and be deemed "unlawful," a bond requirement will apply to any affirmative defense based on this theory.[4]

## CONCLUSION

Should Defendants wish to pursue their affirmative defenses of criminal usury and unlawful stock-price manipulation, they

---

[4] Defendants have not amended or sought to amend their answer and counterclaim to include a breach of contract claim.  Should Defendants seek to amend to plead the short-selling allegations as a breach of contract claim, they must post a bond in order to pursue that claim.

will first need to post a bond pursuant to the Preliminary Injunction Order.

SO ORDERED:

Dated: New York, New York
       February 27, 2009

_____
DENISE COTE
United States District Judge