UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
ROSWELL CAPITAL PARTNERS, LLC, as Collateral :
Agent; BRIDGEPOINTE MASTER FUND LTD.; :
CAMHZN MASTER LDC; and CAMOFI MASTER : 08 Civ. 10647 (DLC)
LDC, :
:
:
                Plaintiffs, :
:
          v. :
:
ALTERNATIVE CONSTRUCTION :
TECHNOLOGIES, INC. f/k/a ALTERNATIVE :
CONSTRUCTION COMPANY, INC.; :
ALTERNATIVE CONSTRUCTION BY PROSTEEL :
BUILDERS, INC. f/k/a PROSTEEL BUILDERS, :
CORP.; ALTERNATIVE CONSTRUCTION :
TECHNOLOGIES CORPORATION; ALTERNATIVE :
CONSTRUCTION MANUFACTURING OF :
TENNESSEE, INC. f/k/a ALTERNATIVE :
CONSTRUCTION TECHNOLOGIES :
CORPORATION; ALTERNATIVE :
CONSTRUCTION SAFE ROOMS, INC. f/k/a :
UNIVERSAL SAFE STRUCTURES, INC.; FUTURE :
OF BUILDING INSTITUTE, INC.; ALTERNATIVE :
CONSTRUCTION MANUFACTURING OF :
FLORIDA, INC.; ALTERNATIVE CONSTRUCTION :
BY IONIAN, INC. f/k/a IONIAN CONSTRUCTION, :
INC.; ALTERNATIVE CONSTRUCTION BY :
REVELS, INC.; ALTERNATIVE CONSTRUCTION :
CONSULTING SERVICES, INC.; ALTERNATIVE :
CONSTRUCTION DESIGN INC.; SOLAR 18 :
ACTECH PANEL, INC.; MODULAR RENTAL & :
LEASING CORPORATION; JOHN DOES 1-10, :
:
              Defendants. :
------------------------------------------------------------------ X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................................................1

SUMMARY OF UNDISPUTED FACTS............................................................................3

ARGUMENT.........................................................................................................................4

I. DEFENDANTS ASSERT NO DEFENSE TO THEIR CROSS-DEFAULT OF THE 2008 FUNDING, THUS RENDERING THEIR PUTATIVE DEFENSES MOOT ......................................................................................................................5

II. DEFENDANTS' PUTATIVE DEFENSE ARISING FROM AN ALLEGED "FRUSTRATION" OF THIRD-PARTY FINANCING FAILS AS A MATTER OF LAW ...................................................................................................................6

    A. Plaintiffs' Refusal To Wave Their Contractual Rights Cannot Support A Finding Of Bad Faith Or Frustration Of Purpose .................................................6

    B. Defendants' Refusal To Wave Contractual Rights Under The 2007 Funding Cannot Support An Affirmative Defense Under The 2008 Funding ...................................................................................................................7

III. DEFENDANTS' PUTATIVE "DELAY IN FUNDING" DEFENSE FAILS AS A MATTER OF FACT AND LAW.......................................................................8

    A. Defendants' "Delay In Funding" Defense Is Factually Unsustainable ..................8

    B. Defendants' "Delay In Funding" Defense Also Fails As A Matter Of Law ..........9

        1. The Alleged "Delay" Does Not Constitute Unclean Hands .......................9

        2. Any Supposed Delay In Funding Does Not Violate The Implied Warranty Of Good Faith And Fair Dealing............................................10

IV. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING DEFENDANTS' PUTATIVE COUNTERCLAIM ......................................................12

CONCLUSION ...................................................................................................................13

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

4 Hour Wireless v. Smith,
  2002 WL 31654963 (S.D.N.Y. Nov. 22, 2002) ................................................................. 6, 9

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ............................................................................................................ 4

Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc.,
  192 A.D.2d 1066 (4th Dep't 1993) .................................................................................. 6, 11

Connecticut Nat'l Bank v. Peach Lake Plaza,
  204 A.D.2d 909 (3d Dep't 1994) ...................................................................................... 10

First Nat'l City Bank v. Kline,
  439 F. Supp. 726 (S.D.N.Y. 1977) ..................................................................................... 4

Hartnett v. Fielding Graduate Inst.,
  198 Fed. Appx. 89 (2d Cir. 2006) ....................................................................................... 4

In re Teletronics Servs., Inc.,
  29 B.R. 139 (Bankr. E.D.N.Y. 1983) .................................................................................. 7

Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.,
  83 F. Supp. 2d 384 (S.D.N.Y. 2000) ............................................................................. 6, 11

M/A-COM Sec. Corp. v. Galesi,
  904 F.2d 134 (2d Cir. 1990) .............................................................................................. 11

Nat'l Distillers & Chem. Corp. v. Seyopp Corp.,
  17 N.Y.2d 12 (1966) ............................................................................................................ 9

Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.,
  472 F.3d 33 (2d Cir. 2006) .................................................................................................. 4

Prudential Sec. Credit Corp. v. Tevee Toons, Inc.,
  5 A.D.3d 226 (1st Dep't 2004) ............................................................................................ 9

Red Rock Commodities, Ltd. v. ABN-AMRO Bank, N.A.,
  1995 WL 714349 (S.D.N.Y. Dec. 5, 1995) ....................................................................... 11

Red Tulip, LLC v. Nieva,
  842 N.Y.S.2d 1 (1st Dep't 2007) ................................................................................... 6, 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

Ricci v. DeStefano,
  530 F.3d 88 (2d Cir. 2008) ........................................................................................... 4

Roswell Capital Partners LLC v. Alternative Constr. Techs.,
  2009 WL 222348 (S.D.N.Y. Jan. 30, 2009) ......................................................... passim

Schecter v. Comptroller of the City of New York,
  79 F.3d 265 (2d Cir. 1996) ........................................................................................... 4

Sec. Pac. Mortgage & Real Estate Servs., Inc. v. Canadian Land Co. of Am., N.V.,
  690 F. Supp. 1214 (S.D.N.Y. 1988) ............................................................................. 9

Sorenson v. Bridge Capital Corp.,
  861 N.Y.S.2d 280 (1st Dep't 2008) ............................................................................ 11

**OTHER AUTHORITIES**

Fed.R.Civ.P. 56(c) (West 2008) ........................................................................................ 4

Plaintiffs Roswell Capital Partners, LLC ("Roswell"), as Collateral Agent, BridgePointe Master Fund Ltd. ("BridgePointe"), and CAMOFI Master LDC ("CAMOFI") (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law In Support of Motion For Summary Judgment. A more detailed discussion of the relevant facts is provided in Plaintiffs' Rule 56.1 Statement, submitted simultaneously with this Memorandum of Law.

## PRELIMINARY STATEMENT

During the course of this litigation, Defendants have failed entirely to articulate anything more than vague, conclusory, factually unsupported and legally unsustainable theories regarding their putative defenses and counterclaim. In moving for summary judgment, any reasoned analysis of Defendants' theoretical defenses and claim affords them substantially more credit than they deserve. To be clear from the outset, Defendants' putative defenses and counterclaim are, in a word, frivolous.

The Court is familiar with the relevant facts and issues. Plaintiffs loaned Defendants in excess of $6 million in two rounds of financing, the 2007 Funding and the 2008 Funding. At the conclusion of a trial on the merits, the Court concluded that Defendants had committed multiple breaches of both the 2007 and 2008 Fundings. Defendants' putative defenses and counterclaim, however, were not consolidated with the trial on the merits and remained pending.

In order to avoid potential Rule 11 sanctions, Defendants withdrew their defenses and conceded to entry of a final judgment regarding their defaults under the 2007 Funding agreements. Defendants declined to withdraw their putative defenses and counterclaim regarding the 2008 Funding. During a March 6, 2009 conference with the Court, Defendants expressed an intent to pursue two theories to support their affirmative defenses: (1) that Plaintiffs refused to waive certain contractual rights between January 2008 and the entry of the

2008 Funding in May, and thereby frustrated Defendants' efforts to raise additional financing from third parties; and (2) that Plaintiffs allegedly "delayed" funding Eligible Contracts pursuant to and following execution of the 2008 Funding in an effort to force Defendants' default. Defendants have at no point offered any further explanation, pleading or evidence regarding either of these putative defenses.

Following the trial of Plaintiffs' claims, the Court found that Defendants committed no less than five separate defaults under the 2008 Funding. Specifically, the Court found that Defendants defaulted by: (1) failing to meet their payment obligations under the 2007 Debentures, which resulted in a cross-default under the 2008 Notes; (2) failing to direct their clients to make payments to the lockbox as required under the Lockbox Agreement; (3) failing to provide BridgePointe and CAMOFI with lockbox payment instructions and lockbox invoices, as required under the Lockbox Agreement; (4) failing to deliver Deeds of Trust granting liens on its real property, as required under the 2008 Security Agreement; and (5) failing to pay principal and interest when due under the Notes.

Of these five judicially-determined events of default, Defendants' putative defenses fail entirely to address the first: that Defendants' uncontested default under the 2007 Funding constitutes an independent default under the 2008 Funding. Because Defendants assert no defense to their payment defaults under the 2007 Funding, they have no defense to this default under the 2008 Funding. This fact alone requires entry of final judgment on Plaintiffs' claims under the 2008 Funding and renders Defendants putative defenses moot.

In addition to being moot, Defendants' putative defenses and counterclaim are also factually and legally infirm. As a threshold matter, and as held by the Court, none of

Defendants' putative defenses are supported by admissible evidence. This absence of evidence negates the existence of a material issue of fact and warrants summary judgment.

Defendants' contention that Plaintiffs' decision to stand on their contractual rights constitutes "bad faith" fails for other reasons as well. First, Plaintiffs' refusal to waive their contractual rights under the 2007 Funding cannot constitute bad faith. Under established law, parties are entitled to stand on their contractual rights and need not waive them simply because a counter-party asks them to. Second, in addition to being legally infirm, Plaintiffs' refusal to waive rights under the 2007 Funding is no defense to Defendants' breaches under the 2008 Funding. The 2008 Funding agreements did not even exist when the Plaintiffs allegedly refused to waive their contractual rights. Defendants' "frustration of funding" defense therefore fails as a matter of both fact and law.

Defendants' second putative defense – that Plaintiffs improperly delayed funding a contract under the 2008 Funding – is equally infirm. Factually, Defendants neither allege, nor provide evidence, demonstrating their entitlement to additional funding, much less that Plaintiffs delayed in providing such funding. In addition, Defendants fail to establish how any alleged funding delay could excuse or have caused any of their multiple and established defaults. Defendants' inability to establish a close nexus between their multiple breaches and Plaintiffs' supposed delays in funding render this defense fatally defective.

Finally, Defendants' putative counterclaim – amounting to nothing more than a cursory reiteration of their alleged defenses – fails for the same reasons as their undefined, theoretical and unsustainable defenses.

## SUMMARY OF UNDISPUTED FACTS

The undisputed facts relevant to this motion are set forth in Plaintiffs' accompanying Rule 56.1 Statement, the vast majority of which is derived from the Court's

findings of fact and conclusions of law determined in its January 30, 2009 Decision and Order. In the interest of avoiding unnecessary repetition, the Court is respectfully referred to the Rule 56.1 Statement.

## ARGUMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Ricci v. DeStefano, 530 F.3d 88, 108 (2d Cir. 2008). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Ricci, 530 F.3d at 108 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co., 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed.R.Civ.P. 56(e)); see also Hartnett v. Fielding Graduate Inst., 198 Fed. Appx. 89, 1 (2d Cir. 2006) ("the existence of a mere scintilla of evidence in support of non movant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the non movant").

In accordance with these general principles, courts will summarily dismiss "[a]ffirmative [d]efenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts'." Schecter v. Comptroller of the City of New York, 79 F.3d 265, 270 (2d Cir. 1996); see also First Nat'l City Bank v. Kline, 439 F. Supp. 726, 728 (S.D.N.Y. 1977) (granting summary judgment dismissing affirmative defense "since it poses no genuine issue of fact that [Plaintiff] did not delay payments on its loan"). Here, each of Defendants'

4

putative affirmative defenses is vague, conclusory, factually unsupported and legally unsustainable. Accordingly, they cannot survive summary judgment.

## I. DEFENDANTS ASSERT NO DEFENSE TO THEIR CROSS-DEFAULT OF THE 2008 FUNDING, THUS RENDERING THEIR PUTATIVE DEFENSES MOOT

Defendants have failed to assert any affirmative defense to the cross-default provisions existing between the 2007 and 2008 Fundings. Under these provisions, a payment deficiency under the 2007 Funding also constitutes a breach of the 2008 Funding. The absence of any defense to the cross-default provisions of the 2008 Funding mandates summary judgment.

Following a trial on the merits of Plaintiffs' default claims, the Court found that Defendants committed multiple events of default under the 2007 Funding. Roswell Capital Partners LLC v. Alternative Constr. Techs., 2009 WL 222348 at *9 (S.D.N.Y. Jan. 30, 2009). Among the various defaults, the Court found that Defendants defaulted on the 2007 Funding by failing to meet their payment obligations under the Debentures. Id. This payment failure is undisputed and well in excess of $175,000. Id. Under Section 7(n) of the Notes, an Event of Default occurs if ACT defaults on indebtedness in excess of $175,000. Id. The conceded payment default under the 2007 Funding therefore triggered the default provisions of Section 7(n). The Court reached this conclusion in its post-trial opinion, finding Defendants had defaulted under Section 7(n) of the Notes. Id.

None of Defendants' putative defenses to their defaults under the 2008 Funding in any way address or excuse this cross-default. There exists no triable issue of fact that could permit Defendants to escape the established law of this case: that they defaulted on their payment obligations under the 2007 Funding and that default constitutes an independent default under the 2008 Funding.

Thus, regardless of whether Defendants' putative defenses address other established defaults under the 2008 Funding, Plaintiffs are entitled to entry of judgment for this breach of Section 7(n) of the Notes as a matter of law.

## II. DEFENDANTS' PUTATIVE DEFENSE ARISING FROM AN ALLEGED "FRUSTRATION" OF THIRD-PARTY FINANCING FAILS AS A MATTER OF LAW

### A. Plaintiffs' Refusal To Wave Their Contractual Rights Cannot Support A Finding Of Bad Faith Or Frustration Of Purpose

Defendants' "frustration of third-party funding" defense raises no triable issue of fact sufficient to survive summary judgment. Plaintiffs' supposed refusal to waive contractual rights granted pursuant to the 2007 Funding, which allegedly "frustrated" Defendants' ability to obtain third-party financing, cannot excuse Defendants' multiple, independent defaults under the 2008 Funding.

At trial, Defendants suggested that Plaintiffs' refusal to waive certain rights under the 2007 Funding constituted "bad faith." (Rappaport Dec., Ex. G at 105:6-8). In response to this argument, the Court concluded at trial that: "[e]xercising contract rights to protect an investment, however, does not constitute bad faith." Roswell, 2009 WL 222348 at *14 (citing Red Tulip, LLC v. Nieva, 842 N.Y.S.2d 1, 7 (1st Dep't 2007)). In so holding, the Court followed established law which holds that "[s]tanding on one's right under a contract does not constitute improper frustration of another's performance." Id. at *13; see also 4 Hour Wireless v. Smith, 2002 WL 31654963, at *2 (S.D.N.Y. Nov. 22, 2002) ("exercising contract rights does not constitute bad faith"); Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp., 83 F. Supp. 2d 384, 391 (S.D.N.Y. 2000) ("In fact, a lender may exercise any contractual right without breaching some duty of 'good faith.'"); Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc., 192 A.D.2d 1066, 1067 (4th Dep't 1993) ("A financing institution does not act in bad faith when it exercises

6

its contractual right to terminate financing."); In re Teletronics Servs., Inc., 29 B.R. 139, 170 (Bankr. E.D.N.Y. 1983) ("a creditor normally has an unqualified right to call a loan when due, to refuse to extend a loan for any cause or no cause at all, and to lawfully enforce collection").

Defendants' putative "frustration of financing" defense fails on this ground alone. Plaintiffs had an absolute right to refuse to waive their "greenshoe" rights and other rights under the 2007 Funding agreements. Defendants have not, and cannot, identify anything in the 2007 Funding Agreements that would suggest otherwise. Accordingly, as a matter of law, refusing to waive these rights is not actionable or an act of bad faith that could support unclean hands or any other affirmative defense.

**B.   Defendants' Refusal To Wave Contractual Rights Under The 2007 Funding Cannot Support An Affirmative Defense Under The 2008 Funding**

Even if Defendants had articulated a cognizable legal theory for their "frustration of financing" defense, this defense would fail for the additional reason that a refusal to waive rights under the 2007 Funding cannot possibly excuse Defendants' subsequent defaults under the 2008 Funding.

Defendants sought to obtain additional financing beginning in January 2008. (Rappaport Dec., Ex. G at 119:8-12.) These efforts culminated in the execution of the 2008 Funding with BridgePointe and CAMOFI in May 2008, through which Defendants received in excess of $2 million in additional financing from Plaintiffs. Roswell, 2009 WL 222348 at *4. Defendants' supposed negotiations with third parties, however, occurred prior to the existence of the 2008 Funding. (E.g., Rappaport Dec., Ex. G at 118:8-121:13). Such negotiations are therefore wholly irrelevant and unrelated to Defendants' subsequent defaults.

Put differently, even if Plaintiffs decision to stand on their rights under the 2007 Funding were somehow actionable, this in no way would excuse Defendants' independent

7

defaults under the subsequent 2008 Funding. Plaintiffs are therefore entitled to entry of summary judgment dismissing Plaintiffs' putative "frustration of funding" defense.

### III. DEFENDANTS' PUTATIVE "DELAY IN FUNDING" DEFENSE FAILS AS A MATTER OF FACT AND LAW

#### A. Defendants' "Delay In Funding" Defense Is Factually Unsustainable

Defendants next contend that Plaintiffs loaned Defendants an additional $2 million, but then "delayed" funding either a portion of that loan or unspecified additional amounts thereafter in order to "force" a default. This defense warrants no serious consideration. The Court has already held that Defendants failed to submit any admissible evidence supporting their "delay in funding" defense. See, e.g., Roswell, 2009 WL 222348 at *13 ("Hawkins' bald assertion that he 'believe[s]' that Plaintiffs delayed funding a contract with Nelson, LC does not suffice as admissible evidence"). Defendants have offered nothing to challenge this conclusion.

In contrast to the lack of evidence supporting a delay in funding, the record is replete with uncontested evidence and admissions that Defendants misrepresented the amount of Eligible Contracts available for funding, diverted funds payable into the Lockbox Account for their own use, and failed to provide Plaintiffs with required documentation. For example, Defendants admitted no less than three times in their 10-Q filings with the SEC that: "[t]he company erroneously deposited certain checks into its general account without going through the Lock Box and erroneously overstated the amounts of contracts available for the initial funding." The 10-Q filings go on to concede that "these matters constituted breaches of the Agreements." (Rappaport Dec., Exs. C ¶ 93, D, F ¶ 62.)

Further, at trial, Mr. Dawe provided uncontested testimony that Mr. Hawkins "revealed that somewhere between three and 600,000 of eligible receivables that were initially submitted to us for advances no longer existed." (Id., Ex. G at 66:21-67:3.) Mr. Hawkins

8

admitted at trial that, although Defendants drew down $2,014,492 under the line of credit, only one repayment of approximately $44,800 was ever made into the lockbox account. (Id. at 112:16-113:7.) Mr. Hawkins also admitted that Defendants failed to provide Plaintiffs with copies of the required lockbox payment instructions sent to customers. (Id. at 108:24-1091-5.)

No reasonable trier of fact could find that Plaintiffs "improperly delayed" funding, let alone that any such delay could excuse Defendants' multiple and independent breaches. Defendants' delay of funding defense should therefore be dismissed.

**B.     Defendants' "Delay In Funding" Defense Also Fails As A Matter Of Law**

Even if Defendants' putative "delay" defense were supported by any evidence, it would still fail as a matter of law.

**1.     The Alleged "Delay" Does Not Constitute Unclean Hands**

The doctrine of unclean hands "is never used unless the plaintiff is guilty of immoral, unconscionable conduct and even then only when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct." Nat'l Distillers & Chem. Corp. v. Seyopp Corp., 17 N.Y.2d 12, 15-16 (1966); see also Prudential Sec. Credit Corp. v. Tevee Toons, Inc., 5 A.D.3d 226, 227 (1st Dep't 2004) (rejecting unclean hands defense in foreclosure action where bad faith allegations, "show nothing more than commercially reasonable conduct on the part of a lender seeking to recover as much of its loan as possible"); 4 Hour Wireless, 2002 WL 31654963, at *2 ("exercising contract rights does not constitute bad faith" as a matter of law).

Courts will accordingly reject an unclean hands defense in a foreclosure action unless the defendant can establish a close nexus between its failure to perform and the challenged conduct. See Sec. Pac. Mortgage & Real Estate Servs., Inc. v. Canadian Land Co. of Am., N.V., 690 F. Supp. 1214, 1224 (S.D.N.Y. 1988) (rejecting unclean hands defense in

9

foreclosure action where defendant failed to connect default to challenged conduct); <u>Connecticut Nat'l Bank v. Peach Lake Plaza</u>, 204 A.D.2d 909, 910-11 (3d Dep't 1994) (affirming rejection of unclean hands defense in foreclosure action in absence of "admissible evidence showing that plaintiff's conduct was immoral or unconscionable").

Here, any alleged "delay" by Plaintiffs in funding purportedly Eligible Contracts would be neither "unconscionable" nor closely related to Defendants' multiple defaults under the 2008 Funding. The Court has already held that ACT defaulted under the 2008 Funding by failing to: (1) direct its clients to make payments to the lockbox; (2) provide BridgePointe and CAMOFI with lockbox payment instructions and lockbox invoices; (3) deliver Deeds of Trust granting liens on its real property; and (4) pay principal and interest when due under the Notes. <u>Roswell</u>, 2009 WL 222348, at *9.

In light of Defendants' uncontested conduct, any delay in providing funding would have been reasonable and prudent, not immoral and unconscionable. Moreover, none of these defaults were tied to, let alone caused or excused by, an alleged delay in funding. Plaintiffs in fact provided Defendants with in excess of $2 million under the 2008 Funding. Any alleged delay in forwarding these or additional amounts can in no way excuse Defendants' failure to repay the acknowledged debt, failure to direct client payments to the lockbox, or failure to provide Plaintiffs' with contractually required documentation.[1]

### 2. Any Supposed Delay In Funding Does Not Violate The Implied Warranty Of Good Faith And Fair Dealing

The implied covenant of good faith and fair dealing likewise cannot rescue Defendants' delay in funding defense.

---

[1] Defendants likewise cannot establish the equitable defense of unclean hands given the Court's prior finding that: "There's enough evidence here that the defendants not only breached the contracts that govern the investment, but have been deceitful; and, of course, they have not abided by court orders." (Rappaport Dec., Ex. G at 142:11-14.)

10

Under New York law, "[i]mplicit in every contract is a promise of good faith and fair dealing that is breached when a party acts in a manner that – although not expressly forbidden by any contractual provision – would deprive the other party of receiving the benefits under their agreement." Roswell, 2009 WL 222348 at *14 (quoting Sorenson v. Bridge Capital Corp., 861 N.Y.S.2d 280, 282 (1st Dep't 2008)).

The implied covenant of good faith and fair dealing, however, "does not extend so far as to undermine a party's 'general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.'" Red Rock Commodities, Ltd. v. ABN-AMRO Bank, N.A., 1995 WL 714349, at *3 (S.D.N.Y. Dec. 5, 1995) (quoting M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990)). Further, "[n]o implied covenant may conflict with the express terms of a contract." Id.; see also Lazar's Auto Sales v. Chrysler Fin. Corp., 83 F. Supp. 2d at 391 ("a lender may exercise any contractual right without breaching some duty of 'good faith'"); Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc., 192 A.D.2d 1066, 1067 (4th Dep't 1993) ("A financing institution does not act in bad faith when it exercises its contractual right to terminate financing."). As this Court recognized in its post-trial opinion, "[e]xercising contract rights to protect an investment . . . does not constitute bad faith." Roswell, 2009 WL 222348 at *14 (quoting Red Tulip, LLC, 842 N.Y.S.2d at 7).

Defendants' conclusory allegation that Plaintiffs' "delayed" funding under the Line of Credit Agreement fails to identify any provision of any agreement which Plaintiffs allegedly breached. Neither Plaintiffs nor the Court are bound to conjure a scenario in which Defendants validly requested additional funding, which Plaintiffs then delayed in paying in breach of some unspecified contractual term. In short, Defendants have not alleged a single

element necessary to make out a defense or claim for breach. Defendants' putative implied covenant defense fails on that ground alone.

The relevant 2008 Funding documents further preclude a defense based on breach of the implied covenant of good faith and fair dealing. Among other requirements, the Line of Credit Agreement mandates that Defendants accompany any request for funding with certification that "there has been no event of default under the Notes or the June 2007 Debentures which has not been cured." (Rappaport Dec., Ex. E.) Given the Court's findings of multiple, existing defaults under the Debentures dating from their inception in June 2007, it would have been impossible for Defendants to make this certification on anything other than a fraudulent basis. For these reasons, Defendants cannot establish any breach of the implied warranty of good faith and fair dealing.

## IV. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING DEFENDANTS' PUTATIVE COUNTERCLAIM

Defendants' counterclaim states, in its entirety, as follows:

Thirty-fourth: Plaintiffs' action breached the covenant of good faith and fair dealing in both the 2007 Loan Agreement and the 2008 Line of Credit Agreement.

Thirty-fifth: Plaintiffs' breach of contract has caused defendants damages.

Thirty-sixth: Plaintiffs conspired with each other in the matters set forth in paragraphs ninth through twenty-eighth.

(Defendants' Answer ¶¶ 34-36.)

As with Defendants' putative affirmative defenses asserting breach of contract, this putative counterclaim: (1) fails entirely to identify any alleged breach of contract; (2) fails to state a claim as a matter of law; and (3) to the extent it purports to incorporate any of the

12

allegations set forth in Defendants' affirmative defenses, suffers the same fatal infirmities of law and fact discussed above.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter an Order dismissing Defendants' affirmative defenses and counterclaim in their entirety and directing entry of final judgment regarding each of Plaintiffs' claims for relief arising from Defendants' multiple breaches of the 2008 Funding agreements, together with an award of costs and reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

March 20, 2009

        DLA PIPER LLP (US)

        By: *[signature]*
        Douglas A. Rappaport
        douglas.rappaport@dlapiper.com
        Peter D. Sharp
        peter.sharp@dlapiper.com
        1251 Avenue of the Americas
        New York, New York 10020-1104
        Tel. (212) 335-4500
        Fax. (212) 335-4501
        Attorneys for Plaintiffs

42387446